525 So.2d 192 (1988)
GEO-JE'S CIVIC ASSOCIATION, INC., et al.
v.
William R. REED, et al.
No. CW 87 0612.
Court of Appeal of Louisiana, First Circuit.
March 17, 1988.
*194 Craig L. Raster, and Walter L. Comeaux, Baton Rouge, for plaintiff-appellee Geo-Je's Civic Ass'n, Inc., et al.
Alex W. Wall, Jr., Baton Rouge, for defendant-appellant William R. Reed, et al.
Before LANIER, CRAIN and LeBLANC, JJ.
LeBLANC, Judge.
This matter is before this court upon the granting of supervisory writs. The judgment under review holds defendant, William Reed, in contempt of court and sentences him to thirty days in parish prison.
The proceedings out of which this judgment arose were instituted by a petition for injunctive relief filed by plaintiffs, Geo-Je's Civic Association, Inc., Geo-Je's Country Estates Subdivision Council and its president, Carl W. Gremillion, Jr. In this suit, plaintiffs sought a permanent injunction enjoining defendants, William and Sherryl Reed, from maintaining a fence on their property in Geo-Je's Country Estates which did not have the approval of the Geo-Je's Subdivision Council as required by applicable subdivision restrictions. After a trial on the merits, the trial court rendered the following judgment on May 22, 1985.
IT IS ORDERED, ADJUDGED AND DECREED THAT:
An injunction issue herein directed to William R. Reed and Sherryl R. Reed, restraining, joining (sic) and prohibiting them, their agents employees and all persons acting on their behalf, from continuing to maintain the fence along the north side of their property in violation of the subdivision restrictions. It is further ordered that the defendants remove the fence along the north side of their property adjacent to Masson (sic) Drive and move it back to the 25' (twenty-five foot) building line.
Upon appeal by defendants this court affirmed the judgment, Geo-Je's Civic Association, et al v. Reed, CA/85/1138, rendered May 15, 1986, and the Supreme Court subsequently denied defendants' writ application. Accordingly, this judgment is now final.
On November 14, 1986, plaintiffs filed a rule to show cause why defendants should not be held in contempt for refusing to move their fence back to the twenty-five (25) foot building line in accordance with the trial court's May 22, 1985 judgment. A hearing was held on this rule on January 23, 1987. At this hearing defendants argued that they had fully complied with the trial court's judgment by removing the fence on the north side of their property adjacent to Maison Drive. Defendants argued that the terms of the judgment ordered only the removal of the fence on the north side of their property and was not applicable to those portions of the fence on the northwest and west sides of their property adjacent to the cul-de-sac at the end of Maison Drive.
In response to defendants' argument, the trial judge stated it was the intent of his original judgment that defendants move the fence back to the twenty-five (25) foot building line on all of their property, regardless of the direction it faced. The judge then drew a red line on a survey of defendants' property, stating that the court's original judgment applied to all of the area within the circle, which included the northwest and part of the western boundary of defendants' property. However, as indicated by the following remarks, the trial judge did not find defendants guilty of contempt.
I don't think there is any question in my mind or your mind what was meant, and you probably are guilty of contempt. But out of an abundance of caution, I am *195 going to give you another chance. What the Court ordered and what the decisions and issues in the case were was for you to remove any fence that's contained within that red area, that red line, that I drew on exhibit-A which I now make part of this record.
. . . . .
The ruling of the court is that the defendant has been given additional explanation of what the Court [sic] order is and orders him to remove the fence within the area explained to him in Court (sic) and as delineated by exhibit-A which is made part of the record.
Defendants were granted sixty days to comply with the court's order to move the designated portions of the fence.
Upon the request of plaintiffs and without notice to defendants, the trial judge subsequently visited defendants' property on April 2, 1987 and observed that they had not complied with his verbal order of January 23rd. Upon returning to his office that day, the trial judge ordered that the rule for contempt previously issued be made absolute as to William Reed,[1] finding him to be in contempt of court, and ordering him to serve thirty (30) days in parish prison and to pay a fine of $2,000.00. Defendant was not present when this judgment was rendered. Nevertheless, a bench warrant was issued by the judge, pursuant to which defendant was arrested and incarcerated on April 6th. On the same day, defendant's counsel filed a writ application with this court seeking a stay of the trial court's judgment pending a review of defendant's conviction and sentence. That evening, this court granted a stay of defendant's judicial commitment "pending further action by this court." Before this court took any further action, however, the trial court on its own motion recalled the bench warrant and vacated and set aside the commitment it had issued on April 2, 1987.
On April 9, 1987, defendant received notice to appear at a hearing before the trial court on April 16th to show cause why he should not be held in contempt of court. After this hearing was continued upon defendant's request, he was given notice that the hearing had been rescheduled for May 1st. The evidence presented at this hearing established that, although defendant had removed the northwestern portion of the fence, he had not done so within the time period ordered, i.e. sixty days. Further, a small portion of the fence on the western boundary of defendant's property still had not been removed as ordered by the court on January 23rd. The trial court found defendant to be in contempt of court and sentenced him to thirty (30) days in parish prison and a fine of $2,000.00[2]. Defendant was further ordered to remove the western portion of the fence within sixty days.
On May 4, 1987 defendant applied to this court for supervisory writs from the trial court's May 1st judgment. Upon denial of this application, defendant filed a writ application with the Supreme Court. On May 29, 1987 the Supreme Court 506 So.2d 1217, granted writs and issued the following order:
The case is remanded to the Court of Appeal for briefing, argument and opinion to determine the correctness of the trial court's decisions of January 23, 1987 and May 1, 1987.
We will first consider the correctness of the trial court's January 23rd decision. Defendant argues that this decision expanded the scope of the original injunction and constituted a prohibited substantive alteration thereof. We disagree. In construing a trial court judgment, the entire context of the proceedings must be considered and, in the event of any ambiguity, it is proper to consider the pleadings, subject matter of the suit, reasons for judgment and other matters of record in *196 arriving at an interpretation consistent with the law and facts presented. State, Etc. v. Sugarland Ventures, Inc., 476 So. 2d 970, 974 (La.App. 1st Cir.) writ denied, 478 So.2d 909 (La.1985). Upon thorough review of this matter, we conclude both from an examination of the original judgment itself, as well as from the record as a whole, that the trial court's January 23rd decision was merely an explanation and clarification of the previously issued injunction. Defendant's argument that the January 23rd decision substantially altered the injunction, which is based on a hypertechnical interpretation of this injunction, is not supported by the record. Accordingly, we find no error in the decision rendered by the court on January 23rd.
In accordance with the Supreme Court's remand order, we now consider the correctness of the trial court's May 1st judgment holding defendant in contempt of court. Defendant argues that the notice he received of the May 1st hearing was inadequate to meet the requirements of La.Code of Civ.Proc. Art. 225(A), which provides, in part, that:
Except as otherwise provided by law, a person charged with committing a constructive contempt of court may be found guilty thereof and punished therefor only after the trial by the judge of a rule against him to show cause why he should not be adjudged guilty of contempt and punished accordingly. The rule to show cause may issue on the court's own motion or on motion of a party to the action or proceeding and shall state the facts alleged to constitute the contempt, (emphasis added)
One purpose of the requirement that the facts constituting the alleged contempt be stated in the rule to show cause is to ensure that the person charged with contempt is clearly apprised of the nature and cause of the accusation against him[3]. Louisiana State Board of Medical Exam. v. England, 252 La. 1000, 215 So.2d 640 (1968). Accordingly, the alleged instances of noncompliance must be correctly, precisely and explicitly set out in the rule for contempt. Debetaz v. Debetaz, 421 So.2d 379 (La.App. 1st Cir.1982). This requirement is mandatory. Louisiana State Board of Medical Exam. v. England, supra; Wall v. Wall, 225 So.2d 47 (La.App. 1st Cir.1969).
The only rule for contempt filed in the present case was that filed by plaintiffs on November 14, 1986. This rule sought to have defendant held in contempt of court for failing to comply with the trial court's May 8, 1985[4] judgment. No rule seeking to hold defendant in contempt of the court's January 23, 1987 verbal order was ever issued, either on the court's own motion or that of plaintiffs. The notice given to defendant regarding the May 1st hearing stated only that defendant was to appear on that date to show cause why he should not be held in contempt. He was not even given notice that the order of which he was allegedly in contempt was that of January 23rd, 1987 and not the trial court's original judgment, as was the case at the January 23rd hearing. The following exchange occurred between defendant's counsel and the trial judge at the commencement of the May 1, 1987 hearing.
MR. THOMAS: Your Honor, so that I might be certain that there is no misunderstanding as to what isis this a continuation of the January 23, 1987 hearing?
THE COURT: No, this is a rule to show cause why the defendant shouldn't be held in contempt for failure to comply with that order.
MR. THOMAS: The reason that I ask that, Your Honor, is that the only pleadings that we have been served with is the pleading that went to trial on January 23, 1987. We have been served with no supplemental or amending or any other *197 pleadings and I don't think it makes an awful lot of difference, but I just wanted to make certain that I know what pleading vehicle is the subject matter of this hearing.
THE COURT: I don't believe there are any pleading vehicles in a contempt situation. If I order you to sit down, I don't have to file a pleading on you to do that. I just order you to sit down and if you don't sit down[5]
MR. THOMAS: Well, this man is fixing to present evidence, Your Honor, and there must be a pleading to which this evidence must attach. And in the event that we are not continuing the January 23, 1987 hearing, I would then ask that the entire transcript of that hearing be made a part of the record of this hearing. (Footnote added)
The confusion reflected by defense counsel herein illustrates the necessity of giving the defendant clear and actual notice of the facts constituting the alleged contempt. Since defendant was not given sufficient notice in the instant case as required by art. 225(A), the May 1st judgment holding him in contempt of court and the sentence imposed as a result thereof are annulled and set aside. See, Louisiana State Board of Medical Exam. v. England, supra; Wall v. Wall, supra; Debetaz v. Debetaz, supra.
Defendant also argues that his May 1st conviction should be set aside on the grounds that it violated his constitutional rights against double jeopardy, since he had previously been sentenced on April 2nd for the same conduct of which he was held guilty and sentenced on May 1st The fact that we have vacated the May 1st judgment on other grounds makes it unnecessary to the resolution of this appeal for us to consider this issue. However, in the interest of judicial economy, we choose to consider this issue, since it is possible that there could be further proceedings in this matter.
Defendant is correct in his assertion that when contempt proceedings are criminal in nature, the defendant is entitled to the basic constitutional protections applicable in criminal cases, which includes prohibitions against double jeopardy. See, In re Milkovich, 493 So.2d 1186, 1189 (La.1986). Thus, our first inquiry is whether the present proceedings were civil or criminal in nature.
To determine whether contempt proceedings are civil or criminal in nature, it is necessary to determine the trial court's primary purpose in imposing sentence. The contempt is considered civil if the court's purpose is to force compliance with its order, while it is considered criminal if the purpose is to punish disobedience of a court order. State In Interest of R.J.S., 493 So.2d 1199, 1202 (La.1986); State v. Hope, 449 So.2d 633 (La.App. 1st Cir.1984). The contempt proceedings at issue, even though they arose from a civil matter, were criminal in nature because the trial court's primary purpose in imposing sentence was clearly punitive. This is evident from the fact that, with the exception of a small portion on the west side of his property, defendant had already removed the fence when the contempt hearing was held and sentence imposed. See State In Interest of R.J.S., ftnt 7 at 1202. A further indication that the court's intent was primarily punitive rather than coercive, is the fact that defendant was not given the option of removing the last part of the fence rather than going to jail.[6]See State v. Hope, supra. Therefore, since these contempt proceedings were criminal in nature, double jeopardy protections are applicable. However, since both the April 2nd and May 1st judgments were set aside because defendant was denied procedural safeguards guaranteed by due process rather than because *198 of evidentary insufficiency, double jeopardy does not bar further proceedings in this matter. State v. David, 468 So.2d 1133, 1135 (La.1985), cert. denied, 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986); State v. Booker, 385 So.2d 1186, 1192 (La. 1980).
An additional reason double jeopardy does not bar further proceedings herein is our conclusion that La.Code of Crim.P. art. 595(3) is applicable to this matter. La. Code of Crim.P. art. 595(3) provides that a defendant shall not be considered as having been in jeopardy in a trial in which the indictment or bill of information[7] was invalid or insufficient. State v. Williams, 301 So.2d 587 (La.1974); State v. Ruple, 437 So.2d 873, 876 (La.App. 2d Cir.1983). Although they may arise in the context of a civil matter, criminal contempt proceedings are quasi-criminal in nature. There are no procedural provisions specifically applicable to such situations. However, we believe certain provisions of the Code of Criminal Procedure may be extended by analogy to criminal contempt proceedings. For instance, we believe the notice required by La.Code of Civ.P. art. 225(A) is analogous to the indictment or bill of information required in criminal cases. The primary purpose each serves is to put a defendant on notice as to the charges against him, so that he can properly prepare a defense. State v. Eaker, 380 So.2d 19, 23 (La.1980), cert. denied, 449 U.S. 847, 101 S.Ct. 133, 66 L.Ed.2d 57 (1980); Louisiana State Board of Medical Exam. v. England, 215 So.2d at 642. Accordingly, we believe art. 595(3) should be extended by analogy to the present case, leading to the conclusion that double jeopardy does not bar further contempt proceedings since defendant was given no notice or opportunity to be heard on April 2nd and was given patently insufficient notice of the May 1st hearing. In such situations the defendant is not considered to have been at jeopardy. La.Code Crim.P. art. 595(3); Williams, supra; Ruple, supra.
Finally, we observe that, considering the nature and background of this matter, should there be further proceedings herein, it would be preferable for them to be heard before another judge in order to avoid any appearance of bias. See, Taylor v. Hayes, 418 U.S. 488, 94 S.Ct. 2697, 2704, 41 L.Ed. 2d 897 (1974); Kidd v. Caldwell, on rehearing, 371 So.2d 247, 256 (La.1979).
For the above reasons, the judgment of the trial court is vacated and set aside. Appellee is to pay all appeal costs.
JUDGMENT VACATED AND SET ASIDE.
NOTES
[1] Although both Mr. and Mrs. Reed were named as defendants in the plaintiffs' rule to show cause, the trial court held only Mr. Reed in contempt of court. Accordingly, all future references to the defendant refer only to Mr. Reed.
[2] We note that this sentence is illegal because the fine imposed exceeds the maximum fine of $1,000.00 permitted by La.Code of Civ.P. art. 227 and La.R.S. 13:4611(1)(b).
[3] La.Code of Crim.P. art. 24 also requires that a person charged with committing a constructive contempt be tried on a rule to show cause which alleges "the facts constituting the contempt".
[4] In their rule, plaintiffs refer to the trial court's judgment as being rendered on May 8, 1985. However, the trial court did not actually render judgment until May 22, 1985, although it did issue its written reasons on May 8, 1985.
[5] While the trial court's comments may be correct with respect to instances of direct contempt, they are not correct with respect to instances of constructive contempt of court. See La.Code of Civ.Pro. Art. 225(A).
[6] Even if there was also a secondary remedial purpose for the sentence imposed, this would not convert the nature of the proceedings from criminal to civil since the court's primary purpose was punitive. Thyssen, Inc. v. S/S Chuen On, 693 F.2d 1171, ftnt. 4 at 1174 (5th Cir.1982).
[7] A bill information is included within the meaning of "indictment" as used in Code Crim. P.art. 595(3). State v. Williams, Supra.